IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 15-560** |
| **ERON LLOYD** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

While Chief of Staff and Campaign Treasurer for former Mayor Vaughn Spencer of Reading, the defendant participated in a conspiracy with Mayor Spencer to bribe City Council President Francisco Acosta and School Board President Rebecca Acosta in exchange for their agreement to influence city council to repeal an ordinance that set a $2600 limit on individual campaign contributions to persons running for city office, such as Mayor Spencer.   The government asks the Court to consider all of the factors set forth below in fashioning an appropriate sentence.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)).  *See also United States v. Smalley*, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions).   In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision.   *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc).   The failure to properly calculate the advisory guideline range will rarely be harmless error.   *United States v. Langford*, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.   "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."   *Cooper*, 437 F.3d at 329.   *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.      **BACKGROUND**

The defendant was the mayor's Chief of Staff and reelection campaign treasurer during the relevant time period.  Presentence Report ("PSR") ¶ 13.  Between March 2015 and May 2015, in consultation with the defendant, Mayor Spencer, through his campaign consultant, offered a bribe to City Council President Francisco Acosta in the form of an $1800 campaign contribution to Acosta's wife, Reading School Board President Rebecca Acosta, who was running for district magistrate judge.  *Id.* at ¶ 15.  In exchange for this payment, Francisco agreed, with the assistance of Rebecca, to ensure that City of Reading Code of Ethics Section 1012 would be amended or repealed by City Council. *Id.* Section 1012 limited any individual's contribution to a candidate running for city office to $2600 per year. Mayor Spencer sought to amend or repeal Section 1012 because he had already received tens of thousands of dollars from contributors Albert Boscov and Jack Gulati in excess of this limit in support of his bid for reelection in the May 2015 democratic primary.[1]

This explicit *quid pro quo* agreement was established in recorded *quid pro quo* conversations between the defendant, the Mayor, Michael Fleck and Sam Ruchlewicz, who worked on the mayor's campaign, Francisco Acosta, and Rebecca Acosta.  On March 26, 2015, Sam Ruchlewicz asked Francisco Acosta to propose a bill in City Council to amend or repeal Section 1012. In exchange, Ruchlewicz told Francisco Acosta that he would give Rebecca Acosta a campaign contribution of $1,000 to $2,000 from the Reading PAC, as well as the promise of contributions from another specific set of contributors of $10,000.   A few days later,

---

1 Boscov contributed $41,000 in 2011, $5500 in 2014, and $50,000 in 2015.   Gulati contributed $5000 in 2014 and $5000 in 2015.

3

on March 30, 2015, Ruchlewicz additionally told Francisco Acosta that he would ensure a campaign contribution of $5,000 to Rebecca Acosta from Albert Boscov, a major local donor. On April 2, 2015, Ruchlewicz told Rebecca Acosta to ensure that her husband, Francisco Acosta, amended or repealed Section 1012.   Rebecca Acosta complained that she hadn't received the promised $5,000 from Albert Boscov.   Ruchlewicz then reminded Rebecca Acosta to talk to Francisco Acosta about repealing Section 1012, and she responded, "I will talk to him." Ruchlewicz assured her that once the matter was resolved, she would receive the $5,000 from Albert Boscov.

On April 7, 2015, Ruchlewicz again asked Francisco Acosta to repeal or amend Section 1012, and said that Rebecca Acosta would receive the $5,000 from Albert Boscov.   Francisco Acosta said that Rebecca Acosta needed $1,800 for billboards for her judicial campaign. Ruchlewicz then spoke to the defendant and Spencer about this arrangement.   Spencer said he wanted an advanced copy of the proposed bill to amend or repeal Section 1012, agreed to give $1,800 from the Reading PAC to Rebecca Acosta as a "loan," and said, "I just wanna make sure [Francisco Acosta] follows through on it."   With the consent of the defendant and Mayor Spencer, on April 10, 2015, Ruchlewicz handed Francisco Acosta an $1,800 check made out to Friends for Rebecca Acosta from the Reading PAC, and they discussed whether the repeal was likely to pass.  PSR ¶ 16.   Francisco Acosta agreed to introduce the bill to amend or repeal Section 1012 the following Monday.  *Id.* at ¶ 17.   That same day, as requested by Spencer, Francisco Acosta sent an electronic mail message to Ruchlewicz, who forwarded it to the defendant, containing a draft bill to amend Section 1012 by increasing the individual

4

contribution limit from $2,600 to $4,000, and an alternative draft bill to repeal Section 1012 entirely.

On April 13, 2015, Francisco Acosta introduced the draft bill to repeal Section 1012 in City Council.  On April 16, 2015, Rebecca Acosta told Ruchlewicz that she had gone with Francisco Acosta to speak to two council members who were opposed to the repeal of Section 1012 in an effort to persuade them.  Ruchlewicz told Rebecca Acosta that Albert Boscov couldn't write her a campaign contribution check until Section 1012 was repealed, and Rebecca Acosta said, "[Boscov] can write me checks.  I'm not running for the city.  I'm not employed by the city. I'm not an elected official in the city."  On April 17, 2015, Francisco Acosta stated to Ruchlewicz that he hadn't deposited the $1,800 check for Rebecca Acosta from the Reading PAC and would not until after the primary election, so that the money would not appear to be connected to Francisco Acosta introducing the bill to repeal Section 1012.  The bill did not pass because, unbeknownst to defendant Spencer, the FBI intervened.  Spencer later stated to Ruchlewicz, "We're paying him money and the mother fucker didn't do a godda- I mean, he did nothing, Sam, nothing."  Fleck later drafted a letter for the defendant to send to donors such as Boscov and Gulati, falsely indicating that their contributions were loans that would be repaid.[2]

---

[2] During his testimony at trial, Lloyd acknowledged having conversations with Mayor Spencer and Sam Ruchlewicz about how to address the campaign limits problem. Lloyd went to Francisco Acosta's office to discuss the repeal of the campaign finance limits. He later discussed with Mayor Spencer providing an $1,800 payment to Acosta from the Citizens for a Greater Reading PAC, and eventually an $1,800 check was provided to Acosta as a forgivable loan on the condition that Acosta would be successful in the repeal of the campaign finance ordinance.  Notes of Testimony, 08/27/18 at 38-45.

**II.     SENTENCING CALCULATION**

    **A.     Statutory Maximum and Minimum Sentence.**

Count One carries a maximum of 5 years' incarceration, a period of supervised release of 3 years, a $250,000 fine, and a $100 special assessment.

    **B.     Sentencing Guidelines Calculation.**

The parties stipulated in the Plea Agreement to the applicability of the following Sentencing Guidelines:

| | |
|---|---:|
| Base offense level, 2C1.1(a)(1) | 14 |
| More than one bribe, 2C1.1(b)(1) | +2 |
| Loss of more than $30,000 but less than $70,000, 2B1.1(b)(1)(D) | +6 |
| Offense involved a public official, 2C1.1(b)(3) | +4 |
| Role in the offense, 3B1.2 | -2 |
| Acceptance of responsibility, 3E1.1 | <u>-3</u> |
| Adjusted offense level | **21** |

The Probation Office calculated the Sentencing Guidelines in the same manner, and arrived at a Guidelines range, in light of a Criminal History Category of I, of 37 to 46 months' incarceration.

**III.    ANALYSIS**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should consider the calculation of the advisory guidelines as set forth in the Presentence Investigation Report, the plea agreement, review all other factors, and impose an appropriate sentence.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  As will be discussed later, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

The nature of this offense is serious.  The defendant, who was in a position of public trust as the Mayor's Chief of Staff, had a responsibility to ensure that the legislative process was conducted in a fair and impartial manner.  Instead, he conspired with the Mayor to circumvent this process in order to improperly maximize the Mayor's campaign contributions. Clearly, the defendant allowed his position as campaign treasurer to override his duty to the citizens of

7

Reading to ensure a fair and honest government.

Nonetheless, the defendant participated in only one of the many bribery schemes the Mayor engaged in, did so for a discrete period of time, *i.e.*, a matter of weeks, and did so at the direction of the Mayor, and with the expectation that he had no choice but to comply.  His culpability relative to other members of the conspiracy, and certainly relative to Mayor Spencer, is substantially less.

The Court must also consider the nature of the offender.  The defendant is 37 years old and resides in Reading, Pennsylvania with his wife of 5 years. Presentence Report ("PSR") ¶ 51. He has an undergraduate degree in economics from Albright University. *Id.* at ¶ 64.  He is currently in the process of obtaining a master's degree. *Id.* at ¶¶ 67-68.  The defendant has been gainfully employed for most of his adult life.  His most recent position since May 2016 has been as the IT director of MAW Communications in Lancaster, Pennsylvania. *Id.* at ¶ 69. In addition to his work for the City of Reading in Mayor Spencer's administration, which ended as a result of this prosecution, he previously was a research associate for the Center for the Study of Economics in Philadelphia.  *Id.* at ¶¶ 72-73. The defendant has experienced some anxiety and depression as a result of the instant prosecution.  *Id.* at ¶ 61.

The Court should impose a sentence that will protect the public from further crimes of the defendant.  Given that the defendant left his position as a result of these charges, this is of minimal concern.  The defendant's conduct in the instant offense appears to be an aberration.

Additionally, the Court should fashion a sentence that will provide adequate punishment, "reflect the seriousness of the offense and promote respect for the law."  18 U.S.C. § 3553(a)(2). The recommended sentence also should afford adequate deterrence to others who would commit

8

a similar offense, and lead to consistency in sentencing. *Id.* Clearly, crimes such as the one in which this defendant engaged deeply impact the public's trust in its government, and must be deterred.

## V. **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court fashion an appropriate sentence, taking into account the Guidelines calculation by the Probation Office, the calculation set forth in the plea agreement, and other factors.

> Respectfully submitted,
>
> LOUIS D. LAPPEN
> Deputy United States Attorney
>
>
> ___*/s/Michelle L. Morgan*_____
> MICHELLE L. MORGAN
> ANTHONY J. WZOREK
> Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Sentencing Memorandum to be served by electronic filing, and/or first-class mail, addressed to:

Shaka M. Johnson, Esq.
1429 Walnut Street
Suite 1001
Philadelphia, PA 19102
shaka@thetrialpartners.com

    */s/ Michelle L. Morgan*
MICHELLE L. MORGAN
Assistant United States Attorney

Dated: March 25, 2019